Associates LLC. I'm sure you thought all that crowd of people was here to see your case. Are you disappointed that they left? Your Honor, I never knew mushrooms could be so Rebuttal? Yes. Five minutes, Your Honor. The trial court below, their judgment should be reversed. They found that my client violated the Fair Debt Collections Practices Act in 2007, particularly Section 1692 GA, by failing to send the appellee a required notice. The court erred when it rejected PRA's argument that a claim under the Act must be brought within one year of the date that the violation occurs. The complaint below was filed June 3, 2009, and the violation occurred in 2007. That's what you say. What's the violation? The violation is the failure to send the notice. The court found the violation to be 1692 GA. You have to concede that. You failed to send a validation notice that was required by statute. In 2007. The court did find we sent a notice in 2003, and I don't believe it's contested at all, that it contained all of the disclosures. But it didn't go to Mr. Peterson. It didn't go to Mr. Peterson, and it was not returned as undeliverable either. So what's their remedy? Let's assume for a minute that you're right on your appeal. Shouldn't they have a remedy for the violation of failing to send a validation notice? Your Honor, the validation notice, the remedy that Congress provides is the FDCPA, 1692 GA, that the notice must be sent within five days of the initial communication. Okay, so there is no remedy for the validation notice. Are you arguing that the validation notice is something that creditors have an inherent incentive to send out because they want to obtain the presumption of validity for the debt? No, not at all, Your Honor. My clients, and I represent clients other than Portfolio Recovery, PRA, creditors want to send a letter to comply with the Act. The Act is strict liability, and it provides for statutory damages, actual damages, and attorney's fees. The Act says that within five days of the initial communication, you must send the notice unless the debt is paid. That's interesting because if you never collect again, take no action after the five days, you still must send the notice in that five-day period. Even after the debt's paid, Your Honor? No, unless the debt is paid. So let's say, for example, within the first five days, PLA began collection efforts, made phone calls. All right. First five days from where? From the initial communication. When was the initial communication? In this case, 2007. 2007. That's what the judge said. That's the initial communication now with this Peterson, right? Okay, now, and so the notice was due in five days after that? Five days after the first telephone call in 2007. And when was the notice given? Never. All right, so when did the statute start doing it? When the notice should have been given? After five days, the first day after the fifth day. So your oral notice starts the statute of limitations. Your oral communication in December 2007 starts the statute of limitations. And you never did send the validation notice, the notice that was required, correct? They sent what they believed was to the correct address in 2003. Right. But in 2007, they never sent it. Okay, so let's go here. 2007, there's a phone call, right? Yes. That's the only thing that happens. So let me just ask if this is your position. All you have to do is to call a consumer, you PRA and say, hello, Mr. Jones, this is PRA. You owe us $5,000. Send it to us at 5 Walter Foreign Boulevard, Flemington, New Jersey, right? Yes. Now, Mr. Jones decides with good reason that he's under no obligation to do anything. But you would have this as the initial communication that would trigger the statute of limitations, even though you didn't satisfy the validation requirement, correct? Now, you're right. That's your argument. Well, not the phone call is not the commencement of the limitations period. It's the failure to send the notice. All right, so five days after the phone call. Irrelevant. All you'd have to do, if you're right, is simply wait a year before following up with more dunning letters, and the consumer would have no recourse under the cease-collection provision because, according to you, the statute of limitations had expired, correct? They would have no recourse to argue that my client violated the statute by failing to send the GA notice. They could still exercise other remedies under the Act to cause my client to cease communications. Absolutely. Even though the year had passed? Even though the statute of limitations had, in your view, expired? In other sections of the Act, for example, in Section 1692C, one of the subsections, I believe it's D, it provides that a consumer, right, can cause a debt collector to cease collection activities and communications with the consumer by sending a written notice. Sure. But he never received here, but you're saying that he can't do it after a year from the initial communication. No, Your Honor, that is a different section of the Act. I know it's a different section of the Act. If he sends the C notice, it stops it like that. You have to stop. Yes. And if you take my factual scenario and he does nothing for over a year and then he comes in and he disputes it, you're saying that effectively starts the statute of limitations again and he can come in and you have to stop collection? If you look at 1692CD, I believe it's CD, maybe CC, the statute says that if a consumer refuses to pay a debt or advises debt collectors to cease communication in writing, then the debt collector must cease. That has nothing to do with GA. Doesn't that assume that there has been a validation certification initially? Not at all.  GA is a whole separate part of the statute. The key for GA, what Congress was concerned with in GA, is that it be sent. That's why it doesn't say receive. That's why you don't have to send it even if the debt is paid within the five-day period. All right, but the consumer, I'm looking at C. The consumer needs to send something in writing and that still seems, it seems like there's a loophole here. The normal consumer, I would suppose, I admit it's supposition, but isn't Judge Berrion something that the really slippery collector would make the phone call, the normal recipient of the phone call would say, what are you talking about? I paid that bill. Click, hang up the phone. You don't then go to the computer and type up a letter. And then 370 days later, the dying notice has come and the statute can be violated at will and that statute of limitations has been blown. But what the key is with GA is the timing that Congress put to the sending of the notice. It's not the giving of the disclosure. It's the sending of the notice. That's the key. And that's why it says within five days after the initial communication, it must be sent. I understand that, but so if the validation notice is sent, you would expect, again, supposition, I would expect the normal consumer getting the validation notice to say, wait a minute, no, this isn't right. But we've got this difficult situation where there is, for all intents and purposes, there is no validation notice. So there's nothing to prompt the normal person, debtor, to do anything. Well, like, for example, in one of the cases that this court looked at on FDCPA and statute of limitations, Shelfhouser v. City Bank, there it was a question of maintaining a lawsuit unlawfully, a lawsuit that was contemporaneously being maintained with the FDCPA action. But that lawsuit had been filed in 2001. And the FDCPA action had been filed in 2005. The plaintiff there argued it's the maintenance of this lawsuit against me. That's the violation. The court said no. We have to look at that discrete moment in time. This is not an employment discrimination case for when that begins. But was there a validation notice sent in that case?  It wasn't discussed after the validation notice was sent. You're saying that Peterson is frozen out of the protections of 1692 G.B. when you never informed him of those protections and his rights in the first place. The moment that PRA attempted to collect from Peterson without sending the notice, that's when Peterson accrued his cause of action. The initial communication in December 2007. The subsequent communication in 2008, let's say. PRA cannot cure that. There is no way PRA can fix it. It can't give a G.B. Even though you didn't do what you're supposed to do, he's barred by the statute of limitations. He's barred to say that we should have sent a notice in 2008. Go ahead. Let me ask you a different question. Let's assume your interpretation of the law is correct. In other words, the phone call was the initial communication, right? A notice was sent within 5 days. The statute ran a year after the 5 days. Now, after that time, can Peterson still dispute the debt? Absolutely. How does he dispute it? In this circuit, Your Honor, it's different from the ninth. Under Graziano v. Harrison, all disputes must be in writing. So he has to send a writing in the third circuit. In other words, say after the year, then, he gets a dunning letter from PRA. He can dispute the debt point? He can dispute a debt whenever he wants. Okay, now, let me dismiss this. So he sends a letter to PRA saying, okay, I dispute this debt. What right to remedies does that give to him, then? Does PRA have to cease collection? Does it have to, you know, verify the debt? What happens then? Depending on what the dispute is. For example, I dispute this debt and I refuse to pay. I think that triggers CC or CD. Then at that point, PRA cannot communicate to him. If PRA is credit reporting, many cases in this circuit and outside have interpreted it to mean that now PRA has to report the debt as disputed to a credit reporting agency. It also has to report the debt disputed when it's communicating with its client so that the client is aware. If it was a regular debt collector instead of a debt purchaser under dispute. Of course, what you communicated to him was a whole other matter. And we'll get to that. You have a lot of rebuttal time, so we'll get you back on rebuttal. Oh, thank you, Your Honor. Thank you, Your Honor. Please look forward. Susan Schneiderman on behalf of Robert Peterson, the appellee in the initial appeal. I think that you actually hit the nail right on the head. We have a situation here where PRA is trying to stand, hide behind a loophole in the law. He never sent the notice. You think there is a loophole in the law? I think there is a slight one. I think that if you read the legislative intent, that if you read the statute, you see what the legislature intended. Well, is that different from what it did? Well, the legislature provided in the statute that within five days of the initial contact, you must send a particular notice. And the purpose of the notice is to let the consumer for whom you're trying to collect, whether it's the correct debtor or an incorrect debtor, whoever it is, and the legislature specifically spoke about protecting those who don't, in fact, owe the debt and who are not being properly done, who are a mistaken identity. Someone like Robert Peterson, in reviewing all this, there's hundreds of Robert Petersons in New Jersey. It's mind-boggling. So you have to send this notice. Once you send the notice, the consumer has 30 days within which to act. But there's no express requirement that the debt collector's initial communication be in writing. Isn't that the loophole here? Isn't that the thing that perhaps needs to be explicit rather than implicit? Well, actually, I disagree with that, Judge. The case law specifically says that the initial communication may be wrong. So... So you agree? I'm agreeing that within five days... But the five days must be in writing. Right. The notice, the initial notice under 1692G must be in writing. Well, I can hear that. The notice, even if it's the initial communication, with the notice in it, it must be in writing. Correct. You can't give the consumer... And if the initial communication is oral, within five days they must give the notice in writing. Correct. So it's a tiny little loophole there. Correct. So here, now, the initial communication with your client was oral, right? Correct. And no written notice was given within five days. Correct. Now, doesn't that trigger the running of the statute of limitation at the end of the five-day period? Well, yes and no, Judge. It's an interesting... This is where the loophole comes to be. The statute is silent about what happens if no notice at all is set. There's bodies and bodies of case law concerning defective notices, notices that contain other information that overshadows the rights that are expressed in the notice. But the clear intent of the statute is that the consumer must be advised of these rights. If the consumer is not advised of these rights, the consumer has no basis to know. I don't understand how you could have said yes and no when the question was, has the statute started to run? You never got notice. You never got notice. So what started the statute from running? It couldn't have. That's what I would think. So where's the no? Well, it couldn't have run. The statute says it begins to run. The statute doesn't say that the statute of limitations only begins to run if the notice is properly set. In fact, it says to the contrary. The statute... If there was a defective notice actually set, the statute would begin to run when that notice was set to. Is that the way the statute is phrased in terms of a defective notice? No. It's case law that describes the statute. It's a case law that analyzes the question. But there is no case law that analyzes the question of what if there's no notice at all? And I think Judge Barry hit the nail on the head at the beginning of Mr. Maurice's argument that how is the consumer supposed to know that he has any rights? And wouldn't a clever debt collector simply wait more than a year from the initial communication to start dunning this consumer again and be absolved somehow of ever having to send a notice? That's a possibility. But isn't it true that there's a substantial benefit that accrues to the debt collector by sending the validation notice? They have an incentive to send that out because they want the presumption of validity. I would think that a rational debt collector would rigorously send out the validation notice and then hope that they hear nothing in 30 days. That's the ideal situation for the debt collector, is it not? It is, but not for the purpose of the presumed validity because the law specifically states that failure of the consumer to dispute the debt, it does not amount to a presumed validity. Well, how do they get the presumption of validity? I thought that after they send the validation notice, if the consumer doesn't challenge it, they get a presumption of validity of the debt. It's not a presumption of validity, Judge. It is the right to resume collection efforts without reference to the notice that was given under 1692G. In other words, after the notice is given, there's certain things that the debt collector cannot do. The debt collector cannot demand immediate payment when they have sent a notice that says you have 30 days within which to dispute. The debt collector cannot list various penalties that could arise even if they are legal and even if they have the right to do them during that 30-day period. But what if clients fail to contest during the 30-day period? What negative consequences befall them? What do the debt collectors do? After the 30-day period elapses, they can continue their debt collection efforts full speed ahead. And that's a substantial benefit. That's a substantial benefit. Yes, it is. So it's a theoretical possibility that debt collectors would sit in a boardroom and say, ah-ha, let's call these folks and then sit on our hands for 370 days and then go after them. But the real rational ones would, as a matter of course, do what the statute requires, send a validation notice, because then when they hear nothing in 30 days, as you said, they can go full board and collect the debt. True. No, the difference is between being able to start full-scale collection efforts after 30 days instead of 365 days or 70 days, right? That's a big benefit. You have another month to start. Time is money, right? That's correct. I think the issue here, though, is giving the consumer the notice. Now, it turned out in this particular case that Mr. Peterson, when more than a year after these initial telephone calls, when Mr. Peterson believed that this was all over and done with because he wasn't the right Mr. Peterson, that was his position, he suddenly started receiving letters from them. Even though he didn't receive the 1692G notice of his rights... He never got that. Correct. Never got it. It was never sent. And there's no dispute that it was never sent to our client. But he disputed the debt in writing. All right. Now, so he started getting these dunning notices again. So what are his rights at that point, never having received the notice in the first place? Well, he had the right to dispute the debt. And he did. And he did dispute the debt. When he got the written notice in October 2008, he disputed that within 30 days. Yes, he did. Even though it didn't have the correct notice. Even though it hadn't given him the protections, hadn't advised him of what he should have advised him long before. Correct. Now, he disputed the debt in writing. Yes, he did. So he has all the rights of a disputing customer except the right to the statutory damages for the failure to give the five-day notice. Oh, that doesn't follow, Judge, because then he disputed the debt and PRA continued the collection act. They should have ceased collections. Correct. They were required when he disputed the debt to cease collections. Correct. And he didn't. And he requested that verification. And he didn't get it. Isn't that a different right than the right to statutory damage for failure to send out a five-day notice? It's all related, Judge. It's really two kind of different things. Well, it's kind of two different things, but I think Judge Thompson had it correct when it was noted in the opinion that in October and December of 2008, there were two discrete letters that were sent demanding payment from Mr. Peterson. Prior to sending those additional letters, there was never a notice, a g-notice sent to him. Those letters, the fact that they were sent, presented two discrete violations of the act that were well within the one-year statute of limitations. I have trouble accepting that because she called them initial communications. That seems to be... She didn't call them initial communications. They have to be initial communications. She called them December 2007, the initial communications, but these were communications within the statute. These were additional communications, not initial communications. All right. She didn't call them initial. She's saying they're communications, but the statute requires initial communication. The statute doesn't say it begins to run, the limitations begins to run during additional communications, later communications, correct communications. The statute says that the limitations period begins to run upon the sending of the initial communication. That is the trigger date. Are you asking us, if we were to refer the court below, are you asking us to read the word initial right out of the statute? No, I'm not, Judge. What I believe that Judge Thomson said specifically and what our position is, is that even though they did not send the letter, their obligation to cease the communication doesn't end. So once they sent the letter in October of 2008, without having first sent him to notice, regardless of when that notice was, it was a violation. They could not communicate with him. It may be a violation, but it may be too late to assert it. But the 2007, October 2007, initial communication, from December to I'm losing it now, did not have the notice. Correct. And there was no notice five days thereafter. There was no notice ever. Ever. There was no notice a year after. That's why the statute, even though that was the initial communication. Correct. So the letter itself, by sending him a letter in October of 2008, it was a violation. Correct. Correct. That was a new event that triggered the statute because he had not been sent a notice. You really don't care which we find because your statutory damages were $1,000, right? The statutory damages were $1,000. Regardless of what the violation is, Judge Thomson articulated various events that were found to be violations. Whichever statutory section of G was implicated, I really don't think that it matters. There were other issues that she left, that the judge left. She didn't make a GB ruling. Correct. The judge specifically said yes, that she found that GA was violated. However, the judge also said that the individual letters that were sent in 2008, in October and December, were individual discrete violations of the statute. And you had raised B, the B subsection in your complaint, as well as the A. Yes, we did. But the order says A. The order says A. And when should we engage in supposition as to she didn't really mean A in the order, she meant B too, she meant the whole statute because she used the words the statute generically. What are we to make of that? We review final orders. Well, you're entitled, as the panel, to review the decision and to affirm it based upon any violation that you believe is supported by her order. So whether she said A, or whether she said there's a discrete violation by having sent the letter in October 2008 and December 2008 without having specified the section that she believed was being violated by those letters, I believe that there's more than sufficient grounds to affirm her decision. This may not be germane to our decision, but I'm still puzzled as to whether or not your client owes this debt or not. I mean, I really am confused as to whether this is truly a case of mistaken identity. And again, it might be academic, but I ask it anyway because I'm curious. Well, first I agree with you that it's academic. However, my client has always taken the position that he is not the Robert Peterson who they were looking for, that they were looking for some other Robert Peterson, that they found him and he provided piles of proof that he believes established that this debt never belonged to him. And he is exactly a type of person that Congress was trying to protect by enacting these laws. Thank you. Rebuttal? I just want to bring to your attention, there's actually two appeals here. There's an appeal of the judgment on the merits and there's a fee order. We know that. Are we going to address the fee order? Stick with the merits. Okay, we'll stick with the merits. Let me first address the issue of GB. The judge below is very clear. She found a violation of GA. By espousing this argument of GB, the appellee is looking to expand their rights under the act, not looking to support the GA argument, but the GB argument. Did Peterson make the GB argument to the district court? Peterson made the GB argument to the district court. The district court just did not rule on it. And I also want to note that one of the things Peterson... He did find the facts that would support a rebuttal. I disagree, Your Honor. I disagree because he had two letters that he got and I believe it was not until he received a letter in 2008, he didn't dispute until 2009. So that was well after he received his 2008 letter. Oh, within the statute of limitations, assuming it started in 2008. Yes, within the period of the first letter. But also he had a claim for E2A, which is a claim that you're attempting to collect debt from a person who doesn't owe it. And that claim was withdrawn, as well as the 11 other claims. This was a focus on GA, that he did not receive a notice. And I don't see how, with all respect to the court below, I can trigger a GA claim that says the notice must be sent within five days of the initial communication by a communication that occurs in 2008, a year after the claim, or a communication that occurs in 2009, a year after, two years after the initial communication. There can only be one initial communication, is your point. As common sense dictates, there can only be one initial. If Congress felt that it should be in subsequent communications, it would have imported the language that it has in the 11. Well, no, except here, you know, the district court found two initial communications, right? Not one. No, one in writing with this other person, and then the phone call with this person. So there are two initial communications. I think what the statute needs is the initial communication with the person you're trying to collect from. You've been trying to collect this. This is 2011, right? It's a $2,000-some-odd debt. And your collection activity started in 2003. We were on Ohio as well. It's horrible. It isn't so horrible. And that's really one of the practical policy problems we have here, too, Your Honor. With the recent decision from this court in Allen, we recognize we can collect time-barred debt. We can't threaten litigation. But it's possible. Now, the debt collector here sent the notice. It wasn't returned. In order to comply with the act, because it doesn't know whether or not the consumer now is receiving the notice, it has to keep sending GA notices again and again and again. Well, it never did to this guy. But it would. If this decision follows what the district court says, we would have multiple GA notices, which can only lead to vast confusion among consumers. What right do they have? Well, I don't know. I mean, multiple. If you sent him a notice every time you contacted him, he'd know what his rights were. He may. He was lucky enough. He was smart enough to finally realize, I'm going to dispute this debt in writing. They were after him for a very long time. And I agree, Your Honor. He was smart. And he did do the right thing by disputing the debt in writing. But by sending multiple. What about some poor old widow woman who's sitting in her little apartment? And you keep getting the letters from you people and without any notification of what she's supposed to be doing. And she gets scared to death. And Your Honor, I understand that. No, that's not nice. But that is not what is being registered. It's not allegedly abusive, deceptive, used profane language. All they did was send letters. No one likes to receive a debt collection letter.  But it's part of what happens in America every day. The statute says that tell them when you do this, when you do this, tell them what their rights are. That's the statute. And they didn't. And they didn't. And they violated. And they did it at a discrete point in time. So it's gotcha. No, Your Honor. They were sued. And they had an E2A claim as well as a laundry list of others. And honestly, I think some of those claims should have been pursued. I thought from day one, if you look at the record, I wrote letters to them explaining why GA is not the basis for this. We're wasting our time on this issue. If you felt this wasn't your debt, you were violated, and we were trying to collect from a person who doesn't owe it, assert E2A. So maybe then the time since the time Judge Thompson ruled after the notice of appeal has been told so they can go back and bring it again, bring those valid claims again. Your Honor, they brought 12 claims. I know. I know. Do you care, since I gave your opposing counsel the opportunity, do you care to apply it on the academic question? You know, Your Honor, I asked him if he owes the debt. He said he didn't owe the debt. So that's what he told me. Do I believe him or not? I don't know. My client is not. That's even more academic. Let me just conclude with this. For the purposes of FDCPA liability, it does not matter. Thank you, Your Honor. Thank you. Very well argued, counsel. We'll take it under advisement.